**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

KENNETH COX,

     *Plaintiff*,               CASE NO. 17-cv-11273

*v.*                          DISTRICT JUDGE LINDA V. PARKER
                              MAGISTRATE JUDGE PATRICIA T. MORRIS

SHAWN BREWER; CORIZON,
MDOC/BHCS; MICHIGAN,
STATE OF; PAUL KLEE; PASS;
BECKWORTH; WEBB; KOPKA;
ROTHHAAR; JOHN DOE; DANIEL
H. HEYNS; BURTON; BOUCK,
DOUGHERTY; BRAMAN; SAGE;
BLACK; HALL; HASS; ARTIS;
DeFOREST; HALL; V. CARLSON;
K. HAMBLIN; SMITH; HOWARD;
RORHIG; PAZLKA; NAPIER;
BROWN; HINSLEY; WILSON;
MURPHY; HENSE; ALFORD
JONES; RHODES; SUDHIR;
WENDY LIU; VERDASCO;
HOLMES; LANGDON; DEEREN;
DANIELSKY; SMITH;
and JEFFREY STIEVE;

     *Defendants*.

_____/


**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON
DEFENDANTS' MOTION TO DISMISS AND MOTIONS FOR SUMMARY
JUDGMENT (Docs. 66, 84, 93) AND PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTIVE RELIEF AND MOTION TO STRIKE
DEFENDANT'S REPLY (Docs. 99, 101)**

I.    **RECOMMENDATION**

For the reasons set forth below, **IT IS RECOMMENDED** that Defendants' Motion

To Dismiss, (Doc. 66), and Motion for Summary Judgment, (Doc. 84), be **GRANTED**,

that the Complaint, (Doc. 1), be **DISMISSED** in its entirety, and that Plaintiff's Motion

for Preliminary Injunction, (Doc. 99), Motion To Strike, (Doc. 101), as well as Defendant

Deeren's Motion for Summary Judgment, (Doc. 93), be **DENIED AS MOOT**.

II.    **REPORT**

A.    **Procedural Background**

Plaintiff Kenneth Cox ("Plaintiff") is a prisoner incarcerated at the G. Robert Cotton

Correctional Facility ("JCF") in Jackson, Michigan, and filed a pro se complaint under 42

U.S.C. § 1983 and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et

seq. on February 21, 2017. He alleges that he is legally blind, and suffers from diabetes,

diabetic neuropathy, a hernia, kidney problems, and shoulder and knee injuries. In addition

to the claim that Defendants failed to adequately treat his pain—and that ultimately he

suffered a diabetic coma as a result of this faulty treatment—he contends that various

defendants fail to adequately accommodate his disabilities and interfere with his right of

access to the courts. (Doc. 1 at 16-19).

On October 24, 2017, Defendants Corizon, Holmes, Wendy Liu, Rhodes, and

Sudhir ("Corizon Defendants") moved to dismiss Plaintiff's Complaint. (Doc. 66).

Thereafter, Defendants Artis, Beckworth, Bouck, Braman, Shawn Brewer, Brown, Burton,

V. Carlson, DeForest, Dougherty, Hall ("Officer Hall"), Hall ("ARUS Hall"), K. Hamblin,

Hass, Hense, Daniel H. Heyns, Hinsley, Howard, Alford Jones, Paul Klee, Kopka,

2

Langdon, MDOC/BHCS, State of Michigan, Murphy, Napier, Pass, Pazlka, Rorhig, Rothhaar, Sage, Smith ("Warden Smith"), Smith ("HUM Smith"), and Webb (collectively, "State Defendants") filed the instant Motion for Summary Judgment. (Doc. 84). Plaintiff filed responses to the Motion To Dismiss, (Doc. 88), and the Motion for Summary Judgment, (Doc. 92). Corizon Defendants replied to Plaintiff's former Response on December 21, 2017, (Doc. 91), and State Defendants replied to Plaintiff's latter Response on January 19, 2018, (Doc. 95). Defendant Deeren also filed a Motion for Summary Judgment on January 8, 2018, which awaits a Response from Plaintiff. (Doc. 93).[1]

On February 12, 2018, Plaintiff submitted a letter requesting preliminary injunctive relief, which I construe as a Motion for a Preliminary Injunction. (Doc. 99). Corizon Defendants responded to this Motion on February 15, 2018. Plaintiff also filed a Motion To Strike Corizon Defendants' December 21, 2017 Reply, (Doc. 101), to which Corizon Defendants responded. (Doc. 102).

### B.   Factual Background

Plaintiff alleges he suffers from blindness, diabetes, diabetic neuropathy, a hernia, kidney problems, and injuries to his shoulder and knee. (Doc. 1 at 12). The injuries to his shoulder and knee, he suggests, "were caused by the lack of an aid." (*Id.* at n.2). "Mr. Cox was required to move throughout the institution without an aid and as a consequence, slip[ped] and fell or stepped into holes resulting in a fall." (*Id.*). The crux of his complaint is that "[a]ll named and/or unknown defendants are in violation of Title II of the ADA for

---

[1] Five defendants—Black, Danielsky, Deeren, Stieve, Verdasco, and Wilson—remain outside the ambit of the instant dispositive motions. I refer to these defendants as "Non-Movant Defendants."

failing to provide or outright denying reasonable accommodations such as a reader/writer and aid on a continuous basis to Mr. Cox." (*Id.* at 12). Although the MDOC does furnish a "reading/writing assistant as well as an aid," he alleges "those services are available only on a limited basis, i.e., three days per week; and are grossly insufficient to meet the needs of Mr. Cox." (*Id.*). In his view, the assistant assigned him by Sage and DeForest "does not know[] how to perform basic (computerized) legal research, and is factually unable to comprehend, write[] and effectively argue a legal position," rendering Plaintiff unable "to prepare and present any legal claims or file a civil action." (*Id.* at 13). Although he filed grievances informing Klee, Pass, Beckworth, Webb, Kopka, Rothhaar, and Doe #1—"all of whom are State of Michigan employees working at, or for, the []Gus Harrison Correctional Facility[]"—that "his special needs have not been met for the months of September, October and November of 2012," none of these individuals paid him any heed. (*Id.*). "Because of his complaints," Plaintiff alleges he was transferred to "Robert G. Cotton Correctional Facility (JCF) in December of 2012, where his problems continued to evolve." (*Id.* at 14). On December 22, 2012, he kited Carlson, Hamblin "and other defendants" as well as DeForest "complaining (via grievance) that he had been without an[] aid and a reading/writing assistant for 10 days." (*Id.*). But these defendants then "conspired to deny" the accommodations he requested. (*Id.*). "After much complaining," Plaintiff says he was assigned an assistant who "refused and failed to provide" any assistance. (*Id.*).  He again filed a grievance notifying Heyns, Haas, Artis, DeForest, and ARUS Hall of his disappointment, but they refused to provide assistance. (*Id.*). On August 27, 2015, Plaintiff filed a grievance informing Bouck, Dougherty, Burton, Braman, Sage, Black, and Officer

Hall that his assistant had assaulted him, but the grievance received no response. (*Id.* at 15). He then filed another grievance on November 10, 2015 "complaining about the lack of appointment of an adequate reading/writing assistant and aid" to Floyd, Rudd, and Hemry, who refused to take any action. (*Id.*).

On August 26, 2016, Plaintiff again filed a grievance expressing disappointment with his assistant and the prison's failure to accommodate his health needs more generally to Artis, Floyd, Warden Smith, Howard, Rohig, Pazlka, and Napier, who he says "were grossly negligent in their individual and collective duty" to provide "a reasonably qualified reading/writing assistant and aid; and as a result Cox has suffered and continues to suffer actual injuries." (*Id.*). These injuries included: "slipp[ing] and f[alling] too many times to count" as he is "routinely forced to negotiate the walkways within the institution unaided"; "serious knee and shoulder injuries, as well as a hernia"; inadequate provision of pain medications "for his shoulder injury and hernia." (*Id.* at 16, 19). With respect to this latter injury, he says "[d]espite being seen by a 'medical provider' (unknown person employed by . . . Corizon) mere Tylenol was ordered on November 21, 2013," and further, that Hass, Artis, Brown, Hamblin, Hinsley, Wilson, Murphy, Hense, and Jones ignored a grievance he submitted detailing this issue. (*Id.* at 16). These individuals, he suggests, "were negligent in [their duty to Plaintiff] when they, individually and/or collectively[,] allowed [him] to languish in pain in violation of the Eighth Amendment." (*Id.*).  In a later grievance, dated January 3, 2014, Plaintiff complained that Corizon, Rhodes, Sudhir, Liu, Verdasco, Hamblin, Haas, Brown, Artis, Wilson, Hinsley, and Hense "refused to manage" his pain from "shoulder [and] knee injuries as well as a hernia," but these defendants failed to take

action. (*Id.* at 17). He followed this grievance with two more, dated February 6, 2015 and March 13, 2015, respectively, complaining that Holmes, Langdon, Deeren, Danielsky, HUM Smith, and Stieve "refused to manage" his "shoulder [and] knee injuries as well as a hernia." (*Id.*). Again, these defendants failed to take action. (*Id.*). Plaintiff alleges that in addition to suffering inadequate treatment of his pain, he "suffered diabetic coma as a result of being given either too much or not enough insulin," a fact "supported by medical records that are currently unavailable to [him] but can be obtained through discovery." (*Id.* at 18).

In his Responses to the instant Motions, Plaintiff elaborates on the medical care Defendants denied him.[2] He suggests, for instance, that "Corizon knew, or should have known, that a hernia could cause serious harm, even death, if not treated," but that it "acted with deliberate indifference towards [Plaintiff's] serious health care needs . . . ." (Doc. 88 at 5). He also avers "Corizon, by and through its actors, (i.e., named or unnamed defendants) were so deficient in treating Plaintiff's diabetes that [he] went into a diabetic coma and almost died." (*Id.*). For years, Plaintiff alleges, he had complained "about the dosage in insulin he is prescribed," which "put Corizon on notice that the insulin dosage was incorrect." (*Id.* at 9). He details a "recent[]" instance of such inadequate treatment as follows:

> Plaintiff was scheduled to see a doctor at an off-site location. Prior to going Corizon defendants informed Plaintiff that he would receive his insulin injection at the off-site location. Once at the off-site location, Plaintiff's sugar level went up to 238 points. The off-site Corizon medical staff informed

---

[2] Because Plaintiff litigates this action *pro se*, I consider these additional allegations as supplementing his Complaint and construe them in the most favorable light. *E.g. Coleman v. Gullet*, No. CIV.A. 12-10099, 2012 WL 5986779, at *11 (E.D. Mich. Sept. 4, 2012), *R. & R. adopted,* No. CIV.A. 12-10099, 2012 WL 5986679 (E.D. Mich. Nov. 29, 2012).

> Plaintiff that he would get his insulin when he gets back to the prison. When Plaintiff got back to the prison his sugar level was recorded at 454 points, which is damaging to internal organs.

(*Id.* at 9-10). The State Defendants are implicated in these allegations as well, for according to Plaintiff, "[a]ll of the State Defendants in this action were directly informed by Plaintiff that insulin dosages provided to him were incorrect," and "despite being forewarned," they "allowed Plaintiff to be subjected to a serious risk of harm that actually resulted in physical harm, i.e., diabetic coma. Plaintiff's medical records, requested during discovery, will provide the Court with material facts concerning this matter." (Doc. 92 at 7).

Plaintiff's December 27, 2017 Response also elaborates on Defendants' denial of aid for his blindness. He "continues to be denied, inter alia, an aid to assist him with movement within the institution. . . . When Plaintiff does go to the yard, he is subject to injury from slips and falls due to the uneven nature of the terrain and/or deplorable conditions of the institution[']s sidewalks," which makes navigation "to the dining hall and/or medical services" difficult. (*Id.* at 4-5). The "discrimination component" of his claim "arises where other prisoners with similar disabilities are provided with full time aids that assist the prisoner with all movement within the institution." (*Id.* at 5). He offers to provide "a list of names" upon the Court's request, should the Court be "unwilling to accept" his averments. (*Id.*).

Plaintiff also alleges that he wants "to file a civil complaint against Corizon and the State of Michigan [BHCS] alleging the unnecessary and wanton infliction of pain and suffering," but that "because the reader/writer assigned to [him] by . . . defendants[] is either factually unable to assist [him] in preparing legal documents, or is simply unwilling

to assist [him] in preparing legal documents, [he] is effectively prevented from using the Courts to seek redress." (Doc. 1 at 18-19). In Plaintiff's view, the "insufficient and inadequate assistant" he receives renders him "legally and factually unable to litigate these claims." (*Id.* at 19). In a subsequent filing, Plaintiff clarifies that "[y]ears prior to the filing of this complaint, Plaintiff implored the State Defendants to provide him with a reader/writer that is capable of preparing a 1983 civil rights complaint. However, as historic records reveal, State Defendants provided a part-time reader/writer whom was unable and/or unwilling to assist Plaintiff in preparing a civil rights complaint." (Doc. 92 at 6).

Attached to Plaintiff's complaint is a list dated September 21, 2016 of special accommodations orders issued for Plaintiff's benefit between June 2013 and September 2016, including: a bottom-bunk assignment, a glucometer, a magnifying glass, prescription athletic shoes, a white cane, glucose tabs per MDOC protocol for low sugars, a reading/writing assistant, an attendant to assist with movement within the institution, a handicap table or tray, a key lock, a talking watch, and a work assignment limiting him to lifting no more than ten pounds. (Doc. 1 at 21).

Plaintiff's Complaint asserts three claims against all defendants: (1) a claim that Defendants violated the ADA in refusing to provide Plaintiff adequate accommodations; (2) a First Amendment claim of infringement of Plaintiff's right of access to the courts under § 1983; and (3) an Eighth Amendment claim of deliberate indifference to Plaintiff's serious medical needs under § 1983. Because two separate dispositive motions are ready for report and recommendation, I address Plaintiff's claims as they pertain to each class of defendants, namely: (i) Corizon Defendants; (ii) State Defendants; and (iii) Defendants

Black, Danielsky, Deeren, John Doe, Stieve, Verdasco, and Wilson ("Non-Movant Defendants").

### C.   Corizon Defendants' Motion To Dismiss

A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of the complaint with regard to whether it states a claim upon which relief can be granted. When deciding a motion under this subsection, "[t]he court must construe the complaint in the light most favorable to the plaintiff, accept all the factual allegations as true, and determine whether the plaintiff can prove a set of facts in support of its claims that would entitle it to relief." *Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 360 (6th Cir. 2001). As the Supreme Court held in *Bell Atlantic Corp. v. Twombly*, a complaint must be dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted if the complaint does not plead "enough facts to state a claim to relief that is plausible on its face." 550 U.S. 544, 570 (2007) (rejecting the traditional Rule 12(b)(6) standard set forth in *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957)). Under Rule 12(b)(6), "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations omitted). Even though a complaint need not contain "detailed" factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (citations omitted).

The Supreme Court has explained that the "tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions." *Ashcroft*

*v. Iqbal*, 556 U.S. 662, 678 (2009). Although Rule 8 "marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era," it "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth . . . . When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

"In determining whether to grant a Rule 12(b)(6) motion, the court primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account." *Nieman v. NLO, Inc.*, 108 F.3d 1546, 1554 (6th Cir. 1997) (quoting 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (2d ed. 1990)). This circuit has further "held that 'documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claim.'" *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997) (quoting *Venture Assoc. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)); *Yeary v. Goodwill Indus.–Knoxville, Inc.*, 107 F.3d 443, 445 (6th Cir. 1997).

To state a claim under § 1983, a plaintiff must allege facts showing (1) the conduct about which she complains was committed by a person acting under color of state law and (2) the conduct deprived her of a federal constitutional or statutory right. In addition, a plaintiff must allege that she suffered a specific injury as a result of the conduct of a particular defendant and she must allege an affirmative link between the injury and the conduct of that defendant. *Rizzo v. Goode*, 423 U.S. 362, 371-72, 377, 96 S. Ct. 598, 46 L. Ed. 2d 561 (1976).

### 1.    ADA Claims[3]

Title II of the ADA declares that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The ADA defines a "disability" as: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such an individual; (B) a record of such impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2)(A)-(C). "Major life activities" include "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i). A "qualified individual with a disability," by contrast, is "an individual with a disability who, with or without reasonable

---

[3] In his December 27, 2017 Response to State Defendants' Motion for Summary Judgment, Plaintiff makes passing mention of the Rehabilitation Act, 29 U.S.C. § 794, but he does not appear to lodge any claims thereunder against Defendants in any filing. (Doc. 92 at 9-10). Although courts must afford *pro se* litigants' pleadings a liberal construction, I decline to craft for Plaintiff an additional Rehabilitation Act claim simply because he briefly alluded to it in summarizing federal law as it relates to disability discrimination.

11

modifications to rules, policies, or practices, the removal or architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." *Id.* § 12131(2). Further, the Act defines "public entity" as follows: (a) "any State or local government"; (b) "any department, agency, special purpose district, or other instrumentality of a State or States or local government"; and (c) "the National Railroad Passenger Corporation, and any commuter authority (as defined in section 24102(4) OF Title 49)." *Id.* § 12131(1)(A)-(C). Of note, the ADA does not impose liability upon individuals. *Lee v. Michigan Parole Bd.*, 104 F. App'x 490, 493 (6th Cir. 2004). Nor does a private contractor "become a 'public entity' under Title II merely by contracting with a governmental entity to provide governmental services." *Cox v. Jackson*, 579 F. Supp. 2d 831, 852 (E.D. Mich. 2008).

To state a claim for relief under Title II of the ADA, therefore, a plaintiff must show: (1) she is a "qualified individual with a disability"; and (2) a "public entity" denied her the benefits of its services, programs, or activities, or otherwise subjected her to discrimination by reason of her disability. As the Supreme Court held decisively in *Pennsylvania Department of Corrections v. Yeskey*, "the plain text of Title II of the ADA unambiguously extends" to those incarcerated in state prisons. 524 U.S. 206, 213 (1998).

Plaintiff's ADA claims against Corizon Defendants must fail. As noted above, the ADA does not impose liability upon individuals or private contractors who provide governmental services. *See Lee*, 104 F. App'x at 493; *Cox*, 579 F. Supp. 2d at 852. Corizon Defendants therefore escape all liability under the ADA.

## 2.    First Amendment Right of Access to the Courts

In *Bounds v. Smith*, the Supreme Court held that the Constitution entitles prisoners to "a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts" via "adequate law libraries or adequate assistance from persons trained in the law." 430 U.S. 817, 825, 828 (1977). This right was itself fundamental because it empowered prisoners in "original actions seeking new trials, release from confinement, or vindication of fundamental civil rights," which "are the first line of defense against constitutional violations." *Id.* at 827-28. Over time, the Supreme Court explained that standing to bring a right-of-access claim requires a showing of "actual injury," which in turn stems from the nature of the underlying claim. *Lewis v. Casey*, 518 U.S. 343, 349 (1996). Justice Scalia, writing for the Court, elaborated on the sorts of claims whose blockage causes actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. *The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement.* Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Id.* at 355 (emphasis added). In other words, an underlying claim can 'actually injure' only if it is a direct appeal, a habeas petition, or an "action[] under 42 U.S.C. § 1983 to vindicate 'basic constitutional rights,'" (*i.e.*, conditions of confinement). *Id.* at 354 (quoting *Wolff v. McDonnell*, 418 U.S. 539, 579 (1974)). A frivolous underlying claim precludes a finding of actual injury. *See id.* at 353 n.3 ("Depriving someone of a frivolous claim . . . deprives him of nothing at all, except perhaps the punishment of Federal Rule of Civil Procedure 11

sanctions."); *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) ("[T]he underlying cause of action, whether anticipated or lost, is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation."); *Hadix v. Johnson*, 182 F.3d 400, 405-06 (6th Cir. 1999) ("By explicitly requiring that plaintiffs show actual prejudice to non-frivolous claims, *Lewis* did in fact change the 'actual injury' requirement as it had previously been applied in this circuit."). The Sixth Circuit has strictly construed the Supreme Court's language, and guarantees to prisoners nothing more than the constitutional minimum illustrated in *Lewis*. *See Thaddeus-X v. Bladder*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc) (reflecting on the Supreme Court's language in *Lewis* and limiting the right of access to "direct appeals, habeas corpus applications, and civil rights claims only."); *see also Green v. Johnson*, No. 13-12305, 2014 WL 4054334, at *3 (E.D. Mich. Aug. 14, 2014) (discussing the Sixth Circuit's narrow construction of *Lewis*'s language, and adhering closely to it); *Mikko v. Davis*, 342 F. Supp. 2d 643, 646 (E.D. Mich. 2004) (same).[1]

The elements of a viable access-to-courts claim in the Sixth Circuit are: (1) "a non-frivolous underlying claim"; (2) "obstructive actions by state actors"; (3) "'substantial[] prejudice' to the underlying claim that cannot be remedied by the state court"; and (4) "a request for relief which the plaintiff would have sought on the underlying claim and is now

---

[1] Taken out of context, the standard articulated in *Thaddeus-X* ostensibly contemplates a broader right of access than that articulated in *Lewis*, particularly with respect to the phrase "civil rights claims." *Thaddeus-X*, 175 F.3d at 391. However, the Sixth Circuit frames its language as a *rephrasing* of the same "carefully-bounded right" described in *Lewis*, rather than an *expansion* of the constitutional minimum.

14

otherwise unattainable." *Flagg v. City of Detroit*, 715 F.3d 165, 174 (6th Cir. 2013) (internal citations omitted). Because the underlying claim "is an element that must be described in the complaint," claimants should thus provide a description of the underlying claim sufficient to "give fair notice to a defendant" and "to apply the 'nonfrivolous' test" to its contents. *Christopher*, 536 U.S. at 415-16. And, as noted above, the right of access to the courts extends to "direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X*, at 391. If the plaintiff has been denied access to a meritorious personal injury case in state court, for example, he has no redress in federal court.

Plaintiff's right-of-access claim against Corizon Defendants also must fail. As Corizon Defendants note, Plaintiff does not identify with any detail what underlying cause of action any defendant quashed. (Doc. 66 at 3). *See generally Christopher v. Harbury*, 536 U.S. 403, 416 (2002) ("Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant."). Indeed, Plaintiff appears to say that, though he would *like* to bring such a claim in the future, he cannot because his reading and writing assistant proves an incompetent and unwilling teammate. (Doc. 1 at 18-19). Alternatively, he suggests in conclusory fashion that he was unable to bring a § 1983 suit in the past because of inadequate assistance. (Doc. 92 at 6). The former claim is frivolous because Plaintiff is currently litigating a suit, undermining the plausibility of any allegation that he is "legally and factually unable to litigate these claims." (Doc. 1 at 19); *accord Lewis*, 518 U.S. at 348 ("'actual injury'" in a right-of-access claim means "'actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to

15

present a claim.'"); *cf. Walker v. Mintzes*, 771 F.2d 920, 932 (6th Cir. 1985) ("There is no claim made here that any particular prisoner was actually impeded in his access to the courts. Rather, the inmates claim a general constitutional right to some minimum amount of time in the prison law library."). The latter claim is deficient, as it provides no details about the underlying action that might put Defendants on notice as to the nature of the charges against them. *E.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009) (conclusory allegations are "not entitled to be assumed true").

Accordingly, Plaintiff fails to state a right-of-access claim against Corizon Defendants.

### 3. Eighth Amendment Deliberate Indifference

In *Estelle v. Gamble*, the Supreme Court held "that deliberate indifference to serious medical needs of prisoners" violates the Eighth Amendment's Cruel and Unusual Punishment Clause because it constitutes the "unnecessary and wanton infliction of pain'" and is "repugnant to the conscience of mankind" by offending our "evolving standards of decency." 429 U.S. 97, 104 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 97, 104 (1976)). To establish a cognizable claim, Plaintiff's allegations must show Defendant's 'sufficiently harmful' acts or omissions. *Id.* at 106. "[I]nadvertent failure to provide adequate medical care . . . will not violate the Constitution." *Id.*

The 'deliberate indifference' inquiry incorporates objective and subjective elements. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). The objective inquiry asks whether the deprivation was "sufficiently serious," which a claimant satisfies where it "has been diagnosed by a physician as

mandating treatment or . . . is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 897 (6th Cir. 2004) (quoting *Gaudreault v. Municipality of Salem*, 923 F.2d 203, 208 (1st Cir. 1990)) (internal quotation marks omitted). The subjective inquiry considers whether official's state of mind was sufficiently culpable; it requires a showing that an official "knows of and disregards an excessive risk to inmate health or safety." *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008) (quoting *Farmer*, 511 U.S. at 837) (internal quotation marks omitted). "[T]he official must both be aware of the facts from which the inference could be drawn that a substantial risk of harm exists, and he must also draw the inference." *Id.*

At the outset, I note that Plaintiff's complaint fails to state a colorable deliberate-indifference claim against Corizon. The Supreme Court held, in *Monell v. Department of Social Services of City of New York*, that a government entity "may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." 436 U.S. 658, 694 (1978). Section 1983 also permits suit against "a private entity that contracts to perform traditional state functions," but that contractor is only liable under a *Monell* claim "for a policy or custom *of that private contractor,* rather than a policy or custom of" a governmental entity. *Johnson v. Karnes*, 398 F.3d 868, 877 (6th Cir. 2005). Per Plaintiff's own admission, he "is not making a 'Monell' claim so there was no express need to 'plead a claim of a . . .

17

policy, practice, or custom by Corizon' . . . in order to make out a deliberate indifference claim. Corizon, irrespective of a policy, practice or custom, failed to provide [him] with medical care of a quality sufficient to prevent needless pain and suffering." (Doc. 88 at 8-9). For this reason, no liability can attach to Corizon for deliberate indifference.

Nor does Plaintiff adequately state a claim for deliberate indifference against the remaining Corizon Defendants. Even assuming the severity Plaintiff ascribes to his conditions, all non-conclusory allegations as to his inadequate medical treatment fail to illustrate any Corizon Defendant had the requisite subjective *actual knowledge* of a danger to Plaintiff. Indeed, Plaintiff refers to Corizon Defendants multiple times as merely negligent or grossly negligent in their care for him, (Doc. 1 at  15-16), which—to some extent—undermines his claims against them. *Accord, e.g.*, *Estelle*, 429 U.S. at 106 ("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."). Plaintiff alleges he filed numerous grievances alerting them to his disagreement with their administration of insulin and pain medication, which evidences not deliberate indifference but a dispute as to the proper course of treatment. *See Darrah v. Krisher*, 865 F.3d 361, 372 (6th Cir. 2017) ("As a general rule, a patient's disagreement with his physicians over the proper course of treatment alleges, at most, a medical-malpractice claim, which is not cognizable under § 1983."). For these reasons, Plaintiff has failed to state a deliberate indifference claim against Corizon Defendants.

**D.      State Defendants' Motion for Summary Judgment**

When a movant shows that "no genuine dispute as to any material fact" exists, the court will grant her motion for summary judgment. Fed. R. Civ. P. 56(a). In reviewing such motion, the court must view all facts and inferences in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The moving party bears "the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-movant's case." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (quoting *Celotex Corp. v. Cartrett*, 477 U.S. 317, 323 (1986)) (internal quotation marks omitted). In making its determination, a court may consider the plausibility of the movant's evidence. *Matsushita*, 475 U.S. at 587-88. Summary judgment is also proper where the moving party shows that the non-moving party cannot meet its burden of proof. *Celotex*, 477 U.S. at 325.

The non-moving party cannot rest merely on the pleadings in response to a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Instead, the non-moving party has an obligation to present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339-40 (6th Cir. 1993). The non-movant cannot withhold evidence until trial or rely on speculative possibilities that material issues of fact will appear later. 10B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2739 (3d ed. 1998). "[T]o withstand a properly supported motion for summary judgment, the non-moving party must identify specific facts and affirmative evidence that contradict those offered by the moving party." *Cosmas v. Am. Express Centurion Bank*, 757 F. Supp.

2d 489, 492 (D.N.J. 2010). In doing so, the non-moving party cannot simply assert that the other side's evidence lacks credibility. *Id.* at 493. And while a pro se party's arguments are entitled to liberal construction, "this liberal standard does not, however, 'relieve [the party] of his duty to meet the requirements necessary to defeat a motion for summary judgment.'" *Veloz v. New York*, 339 F. Supp. 2d 505, 513 (S.D. N.Y. 2004) (quoting *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003)). "[A] pro se party's 'bald assertion,' completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment." *Lee v. Coughlin*, 902 F. Supp. 424, 429 (S.D. N.Y. 1995) (quoting *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991)).

When the non-moving party fails to adequately respond to a summary judgment motion, a district court is not required to search the record to determine whether genuine issues of material fact exist. *Street*, 886 F.2d at 1479-80. The court will rely on the "facts presented and designated by the moving party." *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 404 (6th Cir. 1992). After examining the evidence designated by the parties, the court then determines "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so onesided that one party must prevail as a matter of law.'" *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1310 (6th Cir. 1989) (quoting *Anderson*, 477 U.S. at 251-52). Summary judgment will not be granted "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248.

### 1.    ADA Claims

Plaintiff's ADA claims against individual State Defendants cannot prevail. As discussed above, the ADA does not impose liability upon individuals. *Cox v. Jackson*, 579 F. Supp. 2d 831, 852 (E.D. Mich. 2008). The only remaining State Defendants against which such claims may attach are State of Michigan and MDOC/BHCS ("Public Entity Defendants"). In fact, these are the only claims which implicate Public Entity Defendants, as they are entitled to Eleventh Amendment immunity for all non-ADA claims the Plaintiff has brought against them. *See generally Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984).

The list of special accommodations orders attached to Plaintiff's Complaint shows he received numerous accommodations for his allegedly disabling conditions. (Doc. 1 at 21) (a bottom-bunk assignment, a glucometer, a magnifying glass, prescription athletic shoes, a white cane, glucose tabs per MDOC protocol for low sugars, a reading/writing assistant, an attendant to assist with movement within the institution, a handicap table or tray, a key lock, a talking watch, and a work assignment limiting him to lifting no more than ten pounds). The notion that Public Entity Defendants provided insufficient accommodation is simply implausible, even assuming Plaintiff's non-conclusory allegations to be true. Plaintiff does not, for instance, allege in non-conclusory fashion that discriminatory attitudes toward his disability motivated Public Entity Defendants election not to accommodate his disabilities. *See Dillery v. City of Sandusky*, 398 F.3d 562, 567 (6th Cir. 2005) (holding that plaintiffs must allege a direct causal nexus between challenged conduct and their disability). Indeed, the fact that Plaintiff alleges other disabled inmates

receive adequate accommodations, (Doc. 92 at 5), would seem to imply the absence of this causal nexus. Neither does he supply evidence as to his supposed medical injuries from falling "too many times to count," (*Id.* at 16, 19), or counteract the evidence that he received a special accommodation order for a guide to assist in movement around the prison, (*Id.* at 21). And the accommodation Plaintiff dedicates most of his ADA argument to—that is, the reading and writing legal assistant, (Doc. 1 at 12-13)—is plainly adequate for reasons addressed above and revisited in the following section.

"To prevail" on a motion for summary judgment, "the non-movant must show sufficient evidence to create a genuine issue of material fact. . . . A mere scintilla of evidence is insufficient," as "'there must be evidence on which the jury could reasonably find for the [non-movant].'" *Williams v. Mehra*, 186 F.3d 685, 689 (6th Cir. 1999) (internal citations omitted). Plaintiff has failed to fulfill that burden here. There exists no genuine issue of material fact as to whether Plaintiff was denied access to prison services, and as such, Public Entity Defendants are entitled to summary judgment on Plaintiff's ADA claims.

## 2.    First Amendment Right of Access to the Courts

I discussed the defects in Plaintiff's right-of-access claims above at length. Although this discussion ostensibly related only to Corizon Defendants, the rationale therein applies equally to the Plaintiff's claim that State Defendants interfered with his right of access to the courts. As such, Plaintiff fails to state a claim that State Defendants interfered with his right of access to the courts, and *a fortiori*, no genuine issue of material fact exists as to whether such interference occurred.

### 3.      Eighth Amendment Deliberate Indifference

As with Plaintiff's right-of-access claim, I discussed fatal problems with Plaintiff's deliberate-indifference allegations above. The rationale as to such claims against Corizon Defendants applies with equal force to such claims as leveled against State Defendants. Indeed, in his (largely non-specific) allegations, Plaintiff lumps into a group numerous defendants, accusing all of ignoring the content of his grievances relating to medical care and accommodations. *See generally* (Doc. 1 at 12-19). But as with the Corizon Defendants, no (non-conclusory) allegations plausibly suggest any State Defendants subjectively knew of a danger to Plaintiff and ignored it. That they saw Plaintiff's myriad grievances only shows they knew Plaintiff was upset and disagreed with his medical treatment; it does not show they believed he was correct in his assessment of that treatment. *Cf., e.g.*, *Blackmon v. Haynes-Love*, No. 16-12671, 2016 WL 7107231, at *3 (E.D. Mich. Nov. 7, 2016) ("There is also a significant question as to whether Plaintiff can fulfill the subjective component of the constitutional test: If Haynes-Love merely doubted Plaintiff's complaints, or acted negligently, no liability attaches."), *R. & R. adopted,* No. CV 16-12671, 2016 WL 7033747 (E.D. Mich. Dec. 2, 2016); *Ruchlewicz v. Malatinsky*, No. 13-14452, 2015 WL 1510548, at *3 (E.D. Mich. Mar. 30, 2015) ("Defendants never refused to treat Plaintiff, Plaintiff just disagreed with the treatment he received. . . . Even if Plaintiff proved all of the facts he alleges, he would not show the subjective element required to prove a claim for deliberate indifference."); *Rouse v. Caruso*, No. 06-CV-10961-DT, 2011 WL 918327, at *13 (E.D. Mich. Feb. 18, 2011) ("[T]he complaint contains no allegations suggesting that defendants knew of the alleged outbreaks or of the risk of such outbreaks,

and therefore it fails to allege that defendants were deliberately indifferent under the subjective prong of the Eighth Amendment standard."), *R. & R. adopted,* No. 06-CV-10961, 2011 WL 893216 (E.D. Mich. Mar. 14, 2011). Even Plaintiff's most specific and troubling allegations about falling into a diabetic coma, (Doc. 1 at 18); (Doc. 88 at 5, 9-10); (Doc. 92 at 7), fail to specify who was involved, when the coma occurred, why it occurred, or that those allegedly responsible acted with actual knowledge of the danger. *See generally Estelle v. Gamble*, 429 U.S. 97, 104 (1976). The list of special accommodations orders attached to Plaintiff's Complaint proves he received treatment for his medically determinable conditions. (Doc. 1 at 21). For these reasons, Plaintiff fails to state a claim that State Defendants were deliberately indifferent to his serious medical needs, and *a fortiori*, no genuine issue of material fact exists as to whether their conduct violated the Eighth Amendment.

### E.    Non-Movant Defendants

Plaintiff proceeds *in forma pauperis*, and thus her complaint remains subject to *sua sponte* dismissal "at any time" if this Court finds that it "fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

Excluded from the reach of the instant Motions are claims against five other defendants named in Plaintiff's Complaint: Black, Danielsky, Deeren, Doe, Stieve, Verdasco, and Wilson. Nevertheless, Plaintiff's claims against all such defendants must fail for the reasons set forth above, namely: (1) no such defendant is a "public entity" subject to liability under the ADA; (2) Plaintiff's allegations of infringement of his right

of access to the courts are conclusory and therefore implausible; and (3) Plaintiff fails to properly allege the scienter requirement of deliberate indifference as to any defendant.

Because none of Plaintiff's claims survive, all remaining pending motions, (Docs. 93, 99, 101), should be dismissed as moot.

### F.    Conclusion

For the reasons set forth above, **IT IS RECOMMENDED** that Defendants' Motion To Dismiss, (Doc. 66), and Motion for Summary Judgment, (Doc. 84), be **GRANTED**, that the Complaint, (Doc. 1), be **DISMISSED** in its entirety, and that Plaintiff's Motion for Preliminary Injunction, (Doc. 99), and Motion To Strike, (Doc. 101), as well as Defendant Deeren's Motion for Summary Judgment, (Doc. 93), be **DENIED AS MOOT**.

## III.   REVIEW

Rule 72(b)(2) of the Federal Rules of Civil Procedure states that "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2). *See also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 155; *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d

1370, 1373 (6th Cir. 1987). According to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  March 8, 2018                              S/ PATRICIA T. MORRIS
                                                  Patricia T. Morris
                                                  United States Magistrate Judge


### CERTIFICATION

I hereby certify that the foregoing document was electronically filed this date through the Court's CM/ECF system which delivers a copy to all counsel of record.  A copy was also sent via First Class Mail to Kenneth Cox #363033 at G. Robert Cotton Correctional Facility, 3500 N. Elm Road, Jackson, MI 49201.

Date: March 8, 2018                               By s/Kristen Castaneda
                                                  Case Manager